**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL SCHNEIDER | ) | CASE NO. 4:23-cv-02383-DAR |
| 49 Green Bay Drive, Apt 4 | ) | |
| Youngstown, Ohio 44512 | ) | JUDGE: DAVID A. RUIZ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **AMENDED COMPLAINT FOR** |
| | ) | **DAMAGES AND INJUNCTIVE** |
| CORECIVIC OF TENNESSEE, LLC | ) | **RELIEF** |
| 2240 Hubbard Road | ) | |
| Youngstown, Ohio 44505 | ) | **JURY DEMAND ENDORSED** |
| | ) | **HEREIN** |
| **Serve Also:** | ) | |
| CT CORPORATION SYSTEM | ) | |
| 4400 Easton Commons Way | ) | |
| Suite 125 | ) | |
| Columbus, Ohio 43219 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Michael Schneider, by and through undersigned counsel, as his Complaint against the Defendant, states and avers the following:

## PARTIES, JURISDICTION, AND VENUE

1. Schneider is a resident of the city of Youngstown, county of Mahoning, state of Ohio.

2. Corecivic of Tennessee, LLC, ("Corecivic ") is a foreign company that operates a business located at 2240 Hubbard Rd, Youngstown, Mahoning County, Ohio 44505.

3. Corecivic was at all times hereinafter mentioned an employer within the meaning of R.C. § 4123.90.

4. All of the material events alleged in this Complaint occurred in Mahoning County.

5. Therefore, personal jurisdiction is proper over Defendants pursuant to R.C. § 2307.382(A)(1) and (4).

6. Venue is proper pursuant to Civ. R. 3(C)(3) & (6).

7. The Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

8. Schneider is a former employee of Corecivic.

9. Corecivic hired Schneider on April 1, 2021.

10. Corecivic hired Schneider as a Correctional Officer.

11. Schneider worked in Corecivic's Northeast Ohio Correctional Center ("NOCC").

12. NOCC is a medium security private facility housing adult inmates who have been convicted of crimes under Ohio state law.

13. Schneider's duties included the care and supervision of inmates and residents in the facility's housing units.

14. Schneider often worked without adequate staffing support.

15. After an April 2022 inspection of the NOCC, the Correctional Institution Inspection Committee generated a report that showed an 18.1% increase in inmates who reported being threatened or harassed by other inmates in the facility ("CIIC 2022 Report").

16. The CIIC 2022 Report showed that offenders were observed loitering in the hallways for extended periods of time.

17. NOCC leadership blamed the design of the building for the loitering and congregation of offenders, stating that staff offices are located in hallways and offenders are waiting to be seen.

18. The CIIC 2022 Report showed that NOCC staff surveys were mostly negative with most staff expressing concerns regarding staff retention and communication.

19. The CIIC 2022 Report showed that NOCC staff rated the safety of the staff as "seldom" occurring.

20. The CCIC 2022 Report showed that supervisory staff shared the same safety concerns as the subordinate staff.

21. After a 2023 inspection of the NOCC, the Correctional Institution Inspection Committee generated a report that showed an 43.4% increase in inmates who reported being threatened or harassed by other inmates in the facility ("CIIC 2023 Report").

22. The CIIC 2023 Report showed that offenders were observed entering units and pods without proper assignment, and staff had to redirect those offenders to the proper areas.

23. The CIIC 2023 Report showed that executive staff failed to meet their monthly and weekly rounds and responsibilities for the two months prior to the inspection.

24. The CIIC 2023 Report showed that NOCC staff surveys were overwhelmingly negative with most staff expressing concerns regarding staff retention and communication.

25. The CIIC 2023 Report showed that NOCC staff rated the safety of the staff as "seldom" occurring.

26. The CCIC 2023 Report showed that staff rated the occurrence of policy and procedure being followed as "seldom."

27. The CCIC 2023 Report showed that staff rated the occurrence of employee discipline consistency as "seldom."

28. By policy, Corecivic staff are not to be isolated with inmates for extended periods of time.

29. However, Schneider was regularly isolated with inmates because of staffing shortages and Corecivic 's inability to properly schedule their staff.

30. By allowing Schneider to be isolated with inmates, Corecivic violated its own policy.

31. On or about May 20, 2023, Schneider responded to an inmate fight.

32. Schneider followed his training and policy to stop the inmate fight.

33. Schneider called for backup to assist in stopping the inmate fight.

34. Schneider did not receive backup while stopping the inmate fight.

35. During the process of stopping the inmate fight, an inmate stabbed Schneider ("2023 Work Injury).

36. The 2023 Work Injury caused Schneider physical impairment.

37. On or about Mary 21, 2023, Schneider sought medical treatment for the Work Injury.

38. The treating physician's assessment and plan for Schneider's Work Injury was "Contact with and (suspected) exposure to potentially hazardous body fluids.

39. The treating physician gave Schneider a TDAP vaccine.

40. The treating physician advised Schneider to follow up with his medical providers immediately to draw up HIV and acute hepatitis panels and other necessary body fluid exposure labs on the inmate who was first stabbed with the knife with which Schneider was stabbed.

41. The treating physician's office completed the Bureau of Workers' Compensation First Report of Injury form and notified Schneider's insurance that the injury was a Work Injury.

42. On or about May 21, 2023, Schneider called the Corecivic office to update his supervisors about his 2023 Work Injury.

43. Schneider informed Corecivic of the treating physician's assessment and treatment plan.

44. Schneider notified Corecivic that the treating physician completed the Bureau of Workers' Compensation First Report of Injury form.

45. Corecivic perceived that Schneider, through his treating physician, filed a workers' compensation claim.

46. Alternatively, Corecivic was not confident that Schneider had completed the necessary steps to complete his workers' compensation filing.

47. On or about May 21, 2023Schneider asked Corecivic for assistance with his Workers Compensation paperwork.

48. When Schneider asked Corecivic for assistance with his workers compensation paperwork, Corecivic was on notice of Schneider's intent to file a workers compensation claim.

49. Under the guise of assisting Schneider with his Workers Compensation paperwork, Corecivic requested Schneider appear at the office to talk about his injuries.

50. On or about May 23, 2023, Schneider met with Assistant Warden Richard Phiffer.

51. Phiffer had no intention of assisting Schneider with his workers compensation paperwork.

52. As an Assistant Warden, Phiffer had the authority to hire, fire, and/or discipline employees.

53. Shockingly, Phiffer told Schneider that Warden Douglas Fender prepared employment termination paperwork for Schneider.

54. Phiffer said Schneider's job was terminated because the inmates had a fight.

55. Schneider correctly insisted that no single corrections officer could have prevented that inmate fight.

56. Schneider correctly insisted that he followed his training and policy to respond to that inmate fight.

57. Phiffer insisted that Schneider resign his employment instead of allowing Fender to complete his termination paperwork.

58. Phiffer told Schneider that it would be easier for him to find a job if he resigned instead of being fired.

59. Phiffer's statement was designed to intimidate Schneider into resigning under the duress of post-termination retaliation.

60. Schneider asked Phiffer if he could make a phone call and get legal advice on what to do.

61. However, Phiffer refused to allow Schneider time to think or seek legal advice. Phiffer told Schneider he needed the answer immediately.

62. Under duress, and threat of termination, Schneider resigned.

63. Phiffer was clear when he informed Schneider that absent a resignation, Phiffer was imminently ready to terminate Schneider's employment.

64. Had Schneider not agreed to resign, Phiffer was certain to terminate his employment.

65. Corecivic constructively terminated Schneider.

66. Corecivic constructively terminated Schneider without just cause.

67. Corecivic constructively terminated Schneider in retaliation in response to his intent to file a worker's compensation claim created an untenable situation wherein no reasonable employee could be expected to remain employed.

68. Corecivic constructively discharged Schneider in retaliation for reporting an injury and filing a worker's compensation claim.

### COUNT I: WORKER'S COMPENSATION RETALIATION

69. Schneider restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

70. During Schneider's employment with Corecivic, he suffered from the Work Injury.

71. The Work Injury occurred while Schneider performed work for Defendant.

72. During Schneider's employment, he filed a claim for workers' compensation benefits against Defendant.

73. After Defendant knew that Schneider filed for worker's compensation benefits, Corecivic constructively terminated Schneider's employment.

74. Corecivic constructively terminated Schneider in retaliation for Schneider filing a claim for Workers' compensation benefits.

75. Schneider was constructively discharged without just cause for filing a claim for Workers' compensation benefits.

76. Schneider is therefore entitled to recover damages from Corecivic for its wrongful discharge of him in retaliation for filing a claim for Workers' compensation benefits under R.C. § 4123.90.

77. As a direct and proximate result of Corecivic's conduct, Schneider has suffered and will continue to suffer damages.

### COUNT II: WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY: WORKER'S COMPENSATION CLAIM

78. Schneider restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

79. A clear public policy exists and is manifested in Ohio statutes and in the common law, against terminating and/or retaliating against an injured employee because the employer expects that the employee will file a Worker's Compensation claim.

80. Specifically, in *Sutton v. Tomco Machine*, the Ohio Supreme Court noted "we recognize a common-law tort claim for wrongful discharge in violation of public policy when an injured

employee suffers retaliatory employment action after an injury but before he or she files, institutes, or pursues a workers' compensation claim."(*Sutton v. Tomco Machine*, 129 Ohio.St. 3d 153, 163 (2011)).

81. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on his complaints of dangerous, unsafe, or illegal activity.

82. Defendant's termination of Schneider's employment jeopardizes these public policies.

83. Defendant's termination of Schneider's employment was motivated by conduct related to these public policies.

84. Defendant had no overriding business justification for terminating Schneider's employment.

85. As a direct and proximate result of Defendants' conduct, Schneider has suffered and will continue to suffer damages, including economic and emotional distress damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Schneider demands from Defendant the following:

(a) Issue an order requiring Corecivic to restore Schneider to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against Defendant of compensatory and monetary damages to compensate Schneider for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Schneider' claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Patricia Brandt*
Patricia Brandt (0099382)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: patricia.brandt@spitzlawfirm.com

*Attorney For Plaintiff Schneider*

## JURY DEMAND

Plaintiff Michael Schneider demands a trial by jury by the maximum number of jurors permitted.


/s/ Patricia Brandt
Patricia Brandt (0099382)
**SPITZ, THE EMPLOYEE'S LAW FIRM**